United States District Court
Southern District of Texas
**ENTERED**
February 11, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | § | CIVIL ACTION NO. |
| Plaintiff, | § | 4:20-cv-04265 |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| THIRTEEN PALLETS OF INDUSTRIAL OILFIELD HOSES AND FIVE PALLETS OF BLOWOUT PREVENTERS, | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER ON
STIPULATION OF VOLUNTARY DISMISSAL

Plaintiff the State of Texas seized thirteen pallets of industrial oilfield hoses and five pallets of blowout preventers in June 2020, on assertion that they were to be used in Iran in violation of federal law. The State filed related notices of seizure and intended forfeiture pursuant to Chapter 59 of the Texas Code of Criminal Procedure in Texas state court later that same month. Dkt 1-1 at 3, 9, 15.

TSD SRL is the owner of the property against which the State proceeds and is thus an interested party to this *in rem* action. The company describes itself as a limited liability company organized and existing under the laws of Italy and the European Union, with its principal place of business in Padova, Italy. Id at 23, 29. The State alleges to the contrary that the company is incorporated in the United Arab Emirates and is an "Iranian procurement company." For example, see id at 4, 6.

The company removed the action in December 2020 pursuant to 28 USC §§ 1331 and 1441. Dkt 1. The State didn't seek remand. Jurisdiction exists over the parties, at least for purposes of inquiry at this stage of the proceedings.

Now pending is a joint stipulation of dismissal with prejudice filed by the State on February 4, 2020. Dkt 5. That stipulation was apparently filed immediately following the initial conference held before this Court that same day in *Texas v One 2005 Raytheon Aircraft Co Hawker 800XP*, No 20-cv-03610. That, too, is a civil-forfeiture proceeding. Counsel for the State in both actions are attorneys with the Harris County District Attorney's Office. The affidavit in support of seizure in both actions comes from Polk County Deputy Constable Precinct One, Captain Beau Price.

During the initial conference on *One 2005 Raytheon Aircraft*, the Court questioned the underpinnings of that action when the State advised upon inquiry that no related criminal action against any potential target was underway, nor was any anticipated—even though the State had identified owners of that aircraft. Concern was also expressed when Captain Price stated on the record a supposed belief that the subject aircraft might be used in an attack evoking the type on September 11, 2001. When questioned directly to state evidence backing up such statement, Captain Price admitted that he had none. He was then admonished to contain his remarks to actual and pertinent facts.

Chapter 59 governs civil forfeiture actions, which are *in rem* proceedings against contraband. *State v Silver Chevrolet Pickup*, 140 SW3d 691, 692 (Tex 2004, *per curiam*), citing *Hardy v State*, 102 SW3d 123, 126–27 (Tex 2003). *Contraband* is defined as "property of any nature" that is used or intended to be used in the commission of certain enumerated felonies. Tex Code Crim Proc art 59.01(2); see also *Silver Chevrolet Pickup*, 140 SW3d at 692.

The State bears the burden to prove probable cause for the seizure. *$56,700 in US Currency v State*, 730 SW2d 659, 661 (Tex 1987), citing Tex Const art I, § 9. *Probable cause* in this context means "a reasonable belief that 'a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute.'" *$56,700 in US Currency*, 730 SW2d at 661, quoting *United States v $364,960.00 in US Currency*, 661 F2d 319,

2

323 (5th Cir 1981), superseded on other grounds by statute as stated in *United States v $92,203.00 in US Currency*, 537 F3d 504, 508–09 (5th Cir 2008). The Texas Supreme Court has stressed the importance of the connection between the at-issue property and the alleged criminal activity. "It is that link, or nexus, between the property to be forfeited and the statutorily defined criminal activity that establishes probable cause, without which the State lacks authority to seize a person's property." *$56,700 in US Currency*, 730 SW2d at 661, citing Tex Const art I, § 9.

Texas civil-forfeiture proceedings have been subject to recent consideration by the highest courts of Texas and the United States. In *El-Ali v State*, the Texas Supreme Court had before it a petition for review on the constitutionality of the Texas civil-forfeiture law in light of its amendment to include an innocent-owner defense. 428 SW3d 824 (Tex 2014). Upon declining the petition, the concurrence noted the case was inapt for review because the record was underdeveloped and the petitioner abandoned his innocent-owner defense before the district court. Id at 824–25 (Tex 2014) (Boyd, J, concurring). Then-Justice Don Willett dissented from the denial of review, observing that "modern civil-forfeiture law, which has spread with kudzu-like ferocity in recent years . . . seems less Madisonian than Orwellian." Id at 827 (Willett, J, dissenting). He further noted that such forfeitures involve "inherent imbalances, and judges must ensure that the constitutional scales aren't overly tipped in the government's favor." Id at 830.

Likewise, in *Leonard v Texas*, the United States Supreme Court had before it a petition for *certiorari* on the constitutionality of the same Texas law as to burden of proof. 137 S Ct 847 (2017). Specifically, the petitioner argued that the State should be required to meet its burden by clear and convincing evidence, and not merely by a preponderance of the evidence. Id at 847–48 (Thomas, J, concurring). Concurring in the denial of review, Justice Clarence Thomas noted that denial of *certiorari* was appropriate because the petitioner raised her due process arguments for the first time on appeal. Id at 850. But he also observed that a tension exists between civil-forfeiture statutes, the Due Process Clause of the Fourteenth Amendment, and

traditional recognition of private property rights in our nation. He further related, "*In rem* proceedings often enable the government to seize the property without any predeprivation judicial process and to obtain forfeiture of the property even when the owner is personally innocent (though some statutes, including the one here [from Texas], provide for an innocent-owner defense). Civil proceedings often lack certain procedural protections that accompany criminal proceedings, such as the right to a jury trial and a heightened standard of proof." Id at 847–48. He also provided examples, in Texas, of "egregious and well-chronicled abuses" of this process, linked to the profit-motive incentive of governmental entities perfecting civil forfeiture. Id at 848.

Similar concerns regarding the unconstrained and unsupervised administration of civil-forfeiture proceedings may exist here. The State asserts that the property proceeded against is contraband under Article 59.01(2) of the Texas Code of Criminal Procedure and thus subject to forfeiture because it was used in, intended to be used in, or acquired with proceeds from the commission of an offense under that article. For example, see Dkt 1-1 at 3–5. This was a studied allegation, as evidenced by three separate notices of seizure filed in this action. The State filed its initial notice on June 25, 2020. Id at 3. Its first amended notice was filed on July 14th. Id at 9. And its second amended notice was filed on September 8th. Id at 15. Each contains a supporting declaration sworn to and signed by Captain Price. Each contains similar boilerplate assertion of substantial violation of federal law.

For example, the declaration in support of the second amended notice states in pertinent part:

> Based on the foregoing information, *Your Affiant believes that the aforementioned items are contraband* as defined under Chapter 59 of the Texas Code of Criminal Procedure *and were intended to be used in the commission of, or was purchased with the proceeds of the commission of a felony enumerated under Federal Law* and, therefore; the wiring of funds across Texas state lines to

4

> further a federal felony is a violation of the Texas Money Laundering Statue, Penal Code Chapter 34 (34.02 Money Laundering). *Affiant submits there is probable cause to believe the target orders were ordered by Iranian procurement company TSD, and, through representations outlined above, were intended for use in Iran, and that no party applied for, or was granted, a U.S. export license.* Affiant further finds that the aforementioned items are in fact located in Houston, Harris County, Texas. *Affiant finds the export of U.S. origin oil field equipment to Iran without the required export license from the U.S. Department of Treasury is a federal felony under the laws of the United States, specifically: 50 U.S. Code §1705 (IEEPA), 50 USC 4819 (2) Specific unlawful acts, the Export Control Reform Act of 2018 (ECRA), 18 U.S. Code §554 (Smuggling) and 18 U.S. Code §1956(a)(2) (Money Laundering), 50 USC 4819 (2) Specific unlawful acts, Iranian Transactions Regulations – based on violations of 31 C.F.R. Part 560: U.S. Code of Federal Regulations (the "ITR").*

Dkt 1-1 at 18 (emphasis added). The two preceding declarations were identical. See id at 6–7, 12. The company to the contrary asserts that it "did not acquire the property made the basis of this suit as a result of, or with the proceeds from, the commission of any crime." Id at 29.

District courts have authority under Rule 11 to "impose an appropriate sanction" if they find that any "pleading, motion, or written paper" is filed in bad faith or without minimal evidentiary and legal support. FRCP 11(b), (c). Federal district courts also have inherent power to impose sanctions for "bad faith conduct occurring during litigation." *Jackson v Waller Independent School District*, 2009 WL 1457626, *3 (SD Tex), citing *Elliott v Tilton*, 64 F3d 213, 217 (5th Cir 1995). These powers allow courts to consider and impose penalties even where, as here, the parties voluntarily dismiss the action pursuant to Rule 41(a)(1)(A)(ii). For example, see *In re Ray*, 951 F3d 650, 652–53 (5th Cir 2020). And

courts may take action deemed appropriate to respond to sanctions concerns, including setting hearing and gathering evidence. See generally Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* §§ 1337.1, 1337.3, 2363 (West 4th ed October 2020 update).

The initial conference set for February 18, 2021 will now include hearing on the extent to which the notices of seizure filed by the State complied with Rule 11 of the Federal Rules of Civil Procedure.

The State has casually asserted in this action serious violations of federal law. And it has just as casually determined not simply to dismiss this action, but to do so with prejudice— *and without explanation*. If that dismissal is based on the fact that the notices of seizure were filed in state court, and thus were not then subject to Rule 11, but that the State has determined it cannot now proceed in this action subject to the good-faith requirements imposed by Rule 11, it must squarely state so on the record. Otherwise, the State must aver on the record at hearing that it stands behind its notices of seizure with the requirements of Rule 11 in mind.

The State should be prepared to address topics including, but not limited to, the following:

- o *First,* reasons why the State now seeks voluntary dismissal with prejudice;
- o *Second,* evidence supporting allegation by the State that the property against which it proceeds in this action was intended to be shipped to Iran and all specific concerns by the State in this regard;
- o *Third,* sources of this evidence and identity of government entities, officers, and witnesses giving such information;
- o *Fourth*, evidence establishing that TSD SRL is a company incorporated in the United Arab Emirates and acts as an Iranian procurement company;
- o *Fifth,* plans, if any, to prosecute persons or entities involved in the alleged criminal activity or to refer

- investigation, prosecution, or both to other governmental entities;
    o *Sixth,* circumstances of the seizure of the property involved in this case;
    o *Seventh,* number of other civil-forfeiture actions in which the State (as represented by counsel and government actors in this action) is involved, including all pending actions and ongoing investigations in Texas and in other states;
    o *Eighth,* monetary value of all assets against which the State (as represented by counsel and government actors in this action) currently proceeds; and
    o *Ninth,* total number of persons ever prosecuted for criminal activity on which a civil forfeiture action brought by the government actors here was based.

As expressed at the initial conference in *One 2005 Raytheon Aircraft*, concern exists about the propriety of the initiation and prosecution of this type of action based on what appears to be scant evidence. Depending upon information discerned at hearing, the Court is considering appropriate investigation of the development and prosecution of this matter and that in *One 2005 Raytheon Aircraft*. The Court also has under advisement whether sanctions are warranted in these actions.

Regardless, the Court doesn't take lightly to allegation that the property proceeded against in this action was subject to federal concern of money laundering and smuggling to the Iranian regime with intention for use there, followed by complete dismissal of proceedings without explanation. Nor does it take lightly to assertion in *One 2005 Raytheon Aircraft* that the aircraft there was seized in part due to concern that it might be used for a 9/11-style attack on this nation, which assertion has already been determined to be entirely without factual support.

This hearing will go forward in person. The State may request that the courtroom be sealed if concerns of confidentiality or national security exist. If so, counsel for the State, Defendant, and interested parties must confer as to the best way to proceed while respecting the rights and interests of all.

7

Notice of this Order will be docketed in *Texas v One 2005 Raytheon Aircraft Co Hawker 800XP*, No 20-cv-03610. Counsel in that action will be permitted to appear and be heard on February 18th, if desired.

SO ORDERED.

Signed on February 11, 2021, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge